**UNITED STATES of America,
Plaintiff,**

**v.**

**Lawrence D. FRANTZ, Defendant.**

United States District Court,
S.D. Ohio,
Western Division.

April 3, 2001.

Jeffrey D. Slyman, Vandalia, OH, for Lawrence D Frantz.

James Duane Brubaker, WPAFB, OH, for U.S.

**DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO SUPPRESS**

MERZ, United States Magistrate Judge.

This case is before the Court on Defendant's Motion to Suppress (Doc. No. 12). At oral hearing on March 16, 2001, Defendant withdrew the second and third branches of the Motion and rested on the cross-examination of the arresting officer, Sergeant Dowell of the Wright–Patterson Security Police. The testimony has been transcribed (Doc. No. 17)

The Government's sole witness, Air Force Sergeant Bruce A. Dowell testified that he stopped Defendant for speeding 41 in a posted 25 mile per hour zone on

Spinning Road, headed north toward Airway Road, at 11:50 p.m. on August 9, 2000. When Sergeant Dowell turned on his overhead lights, Mr. Frantz pulled over very promptly, but put his car into park before coming to a stop, causing the gears to grind loudly. It was at that point that Sergeant Dowell began to believe Mr. Frantz might be operating his car under the influence of alcohol.

When Sergeant Dowell approached the car, Mr. Frantz was talking excitedly and rapidly (Tr. at 5). He already had his license and registration available for the officer. Sergeant Dowell observed a strong odor of an alcoholic beverage, glassy and bloodshot eyes, and slurred speech (Tr. at 5, 7). At that point his suspicion strengthened and he asked Mr. Frantz to get out of the car. When he did so, Defendant's walk was unsure (Tr. at 8). Mr. Frantz then refused to perform the standard field sobriety tests (Id.). He was then detained and asked to submit to a breathalyzer test, which he refused.

Defendant claims there was no reasonable, articulable suspicion that Mr. Frantz was operating his car under the influence of alcohol and therefore no reasonable basis to ask him to perform the field sobriety tests. Defendant seeks to suppress his refusal to do so. Defendant also asserts there was no probable cause to believe he was operating under the influence and therefore no probable cause to subject him to custodial detention for purposes of the breathalyzer test; he seeks to suppress his refusal to submit.

■ Defendant relies principally on three recent unreported decisions of the Ohio Court of Appeals for the Second District.

- In *State v. Spillers*, 2000 WL 299550 (Ohio App. 2d Dist., March 24, 2000), the court found the following indicia of DUI insufficient to warrant detention to administer field sobriety tests: weaving within one's lane of travel (characterized by the court as *de minimis* traffic violations, although citable), yelling at the officer upon apprehension at his own home "I am at home. You can't do nothing," admission of drinking a couple of beers, and smell of a slight odor of beer.

- In *State v. Segi*, 2000 WL 1162035 (Ohio App. 2d Dist., August 18, 2000), the following were found insufficient to establish probable cause to arrest for DUI prior to admission of any field sobriety tests: driving over the right edge marker three times, admission of drinking, and smell of a strong odor of an alcoholic beverage. Because the arrest had occurred before the tests were administered, the court elided the reasonable articulable suspicion question. 2000 WL 1162035 at *3.

- In *State v. Dixon*, 2000 WL 1760664 (Ohio App. 2d Dist., December 1, 2000), the following were found insufficient to create a reasonable, articulable suspicion of DUI: early morning hours, glassy and bloodshot eyes, admission of drinking one or two beers, and "an odor of alcohol about the person."

While all of these decisions are unreported, they are recent and represent the views of the entire Second District Court of Appeals, since all of its members wrote or concurred in one or more of these decisions. While the decisions are not binding in either the state[1] or federal[2] courts,

---

1. Rule 2, Ohio Supreme Court Rules for the Reporting of Opinions.

2. Defendant is charged under the Assimilative Crimes Act, 18 U.S.C. § 13. Under the Act, the elements of state offenses are assimilated into federal law, but not state court interpretations of the statutes creating those offenses. *United States v. Kiliz,* 694 F.2d 628 (9th Cir. 1982), citing *Johnson v. Yellow Cab Transit*

they deserve this Court's respectful consideration, both because of the deserved reputation of the Second District and because motorists and law enforcement personnel in this area should not be subject to conflicting interpretations of the Fourth Amendment, if conflict can be properly avoided.

It is not disputed that Sergeant Dowell had probable cause to stop Mr. Frantz for the traffic offense of speeding, even if the stop had had the original purpose of investigating further to determine if Mr. Frantz was operating under the influence. *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), cited in *Spillers* at *2; *Dayton v. Erickson,* 76 Ohio St.3d 3, 665 N.E.2d 1091 (1996). Nor is it disputed that the scope of intrusion on a person's liberty after a *Terry* stop must be reasonably related to the basis of the stop. *Spillers* at *3; *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889(1968); *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). Those things said, however, this Court cannot understand the rationale of the Second District Court of Appeals' decisions.

■ In order to justify a *Terry* stop, an officer must have a reasonable, articulable suspicion of criminal activity. The criminal offense involved here is driving under the influence of alcohol. When a traffic enforcement officer stops a motorist, he already has direct knowledge of the first element of the offense: driving. Of course, driving in and of itself is an innocent activity, but so is standing on the street in front of a store (*Terry* ) or sitting in a parked car, even in a high-crime area (*Williams* ). The point is that virtually every DUI investigation is of a presently ongoing offense; absent some associated harm such as a death, it would be rare for the police to investigate a suspected DUI offense in the past.

■ Obviously, observation of driving alone is not enough to warrant a *Terry* stop to administer field sobriety tests. What more is needed? In *Dixon* the Second District held:

> Although, in the case before us, the police officer observed glassy, bloodshot eyes, that observation is readily explained by the lateness of the hour, 2:20 a.m.

> The mere detection of an odor of alcohol, unaccompanied by any basis, drawn from the officer's experience or expertise, for correlating that odor with a level of intoxication that would likely impair the subject's driving ability, is not enough to establish that the subject was driving under the influence. Nor is the subject's admission that he had one or two beers.

Judge Fain relied in part on the proposition that "The law prohibits driving under the influence of alcohol; it does not prohibit driving after the mere consumption of an alcoholic beverage." *Spillers* at *3 and *Dixon* at *2, both citing *State v. Taylor,* 3 Ohio App.3d 197, 198, 444 N.E.2d 481 (1981). That is of course true. But if the contrary were true—if the law prohibited mere driving after drinking—then the officer having observed the driving and smelling even a slight odor of alcohol would have probable cause to **arrest** for this hypothetical new offense: driving after drinking. What is sought to be justified here is not an arrest, but a *Terry* stop for investigation. Logically, there must be some set of circumstances short of probable cause but sufficient for reasonable suspicion which will warrant the officer in proceeding further in his or her investigation; the evidence needed for a *Terry* stop is by definition less than probable cause for arrest. *United States v. Sokolow,* 490

*Co.,* 321 U.S. 383, 64 S.Ct. 622, 88 L.Ed. 814    (1944).

U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

It is the very nature of circumstantial evidence that one piece of it is seldom sufficient for conviction, which requires proof beyond a reasonable doubt. It is the combination of pieces of evidence, each of which is individually consistent with an innocent explanation, which may lead collectively to the eventual conclusion of guilt.

- Obviously, glassy, bloodshot eyes at 2:20 a.m. (*Dixon*) are explicable by many innocent causes: the driver may have been awake for many hours[3] or have an eye irritation or illness, etc. But glassy, bloodshot eyes are also an effect of alcohol on the body.
- Obviously, the odor of alcohol coming from a vehicle is consistent with many innocent causes, e.g., a passenger spilling beer before being dropped off by the "designated driver." But the odor is also consistent with alcohol consumption by the driver. Obviously, the consumption of one or two beers is consistent with innocence: particularly persons who drink regularly and have some alcohol tolerance may drive after consuming one or two beers with no appreciable impact on their ability to do so[4]. The question is not whether all three of these together is sufficient to convict or even to arrest, but whether they merit the additional investigation, and consequent limitation on the driver's liberty, required for the field sobriety tests.

The field sobriety tests do not involve a major intrusion on liberty. Unlike the blood test approved in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), they involve no invasion of the body. Typically the driver is removed only so far from his car as is necessary for the tests to be valid (level area) and for his own safety (off the highway). The time involved, perhaps fifteen minutes, is far less than the time approved for temporary detention of suspected drug couriers or even to issue a driver a citation for a minor traffic offense.

Moreover, the intrusion is reasonable both from the perspective of the driver and of society at large. The field sobriety tests, when properly administered, are highly reliable indicators of alcohol intoxication. *State v. Homan*, 89 Ohio St.3d 421, 732 N.E.2d 952 (2000). Thus the unimpaired driver who successfully passes the tests will have avoided formal accusation of a serious offense with no more than fifteen minutes time expended. He will have given of his liberty to support a practice—the reliable roadside testing of drivers displaying indicia of DUI—which is extremely important to his welfare and that of his fellow citizens. DUI arguably causes far more deaths than any other substance abuse violation and the victims are more likely to be completely innocent[5].

In this case, Sergeant Dowell had, at the time he requested Mr. Frantz to perform the field sobriety tests, a reason-

---

3. There was no *evidence* in *Dixon* that the bloodshot eyes were caused by the driver's having been awake for many hours-Judge Fain hypothesizes that explanation. There was evidence, however, that the bloodshot eyes were caused by alcohol consumption. Which hypothesis is more likely? Can an appellate court take judicial notice that one or the other is more likely?

4. Of course, a driver's assertion that he has had one or two beers is not necessarily true. The undersigned has heard literally hundreds of DUI cases where a driver's claim of one or two beers was impossible to have been true, given the results of later scientific testing.

5. Young children are not infrequent victims of DUI offenders; those who die of drug overdoses or in drug trade violence have usually put themselves in harm's way.

able, articulable suspicion that Defendant had been driving under the influence. The facts supporting the suspicion, all articulated by Sergeant Dowell, were:

- Putting the car in park before stopping, a practice likely to cause mechanical damage and therefore something an experienced driver was unlikely to do unless somehow impaired. The inference from this fact to impairment became stronger when Sergeant Dowell was able to observe that Defendant was an obvious adult and therefore probably an experienced driver, rather than a new driver who might make this mistake out of anxiety at the police stop.
- Glassy, bloodshot eyes
- Slurred speech
- An excited manner
- A strong odor of an alcoholic beverage.

While each of these circumstances, taken alone, is consistent with a completely innocent explanation, each of them alone also supports an inference of DUI. Therefore, taken together, they are sufficient to support requiring the field sobriety tests. The Court declines to adopt the standard suggested by the *Spillers–Dixon–Segi* trilogy and also declines to suppress Mr. Frantz's unexplained refusal to take those tests.

After Mr. Frantz refused the tests, he was detained, transported to the Security Police Office, and offered a chemical test of his breath to determine the amount of alcohol in his system. He refused to take that test and seeks to suppress his refusal on grounds there was no probable cause for the arrest[6]. The Court agrees that Sergeant Dowell did not acquire

enough additional evidence to have probable cause for arrest. The purpose of the field sobriety tests is to confirm or disconfirm an initial suspicion of DUI. Here, there are no results of such tests. The only additional evidence was that Mr. Frantz was unsteady on his feet and refused the tests. Again, each of these facts is consistent with an innocent explanation and also consistent with guilt, but they do not add enough to the prior evidence to raise it to the level of probable cause. Mr. Frantz's refusal to take the breathalyzer test will be suppressed.

With the suppression of the refusal of the breathalyzer test, Defendant cannot be found guilty on Count One of the Information. Government counsel will promptly advise the Court is he desires to proceed to trial on Counts 2 and 3.

---

6. The Air Force uses the term "detention" to refer to custody imposed on civilians, reserving the term "arrest" for taking Air Force personnel into custody. This Court has repeatedly held that detention by Air Force Security Police for purposes of administering a breathalyzer test amounts for arrest for Fourth Amendment purposes.