JOURNAL ENTRY AND OPINION
{¶ 1} Defendant, Mark Sanders, appeals the trial court's denial of his motion to suppress following a suppression hearing. Defendant was charged with driving under the influence, driving with a blood alcohol content reading over 0.17, and speeding, in violation of Cleveland City Ordinances. Following the court's denial of his motion to suppress, he pleaded no contest to and was found guilty of operating a vehicle with a high alcohol concentration in violation of Cleveland Ordinance 433.01(a)(6). The other two counts were nolled.
 {¶ 2} Defendant appealed, stating one assignment of error with seven issues listed under that assignment. The assignment of error states:
 {¶ 3} The trial court erred to the prejudice of appellant by denying appellant's motion to suppress evidence.
 {¶ 4} The first issue listed under this assignment of error states:
 {¶ 5} Whether the arresting officer conducted an improper warrantless stop of the appellant's vehicle; thus rendering all subsequently obtained evidence the fruit of an unconstitutional search and seizure in violation of the rights guaranteed appellant by the fourth and fourteenth amendments to the united states constitution and article I, Section 14 of the ohio constitution.
 {¶ 6} Defendant claims that his stop was not justified because the officer lacked an articulable suspicion that criminal activity took place at the time of the stop. Because he believes that the officer lacked probable cause to stop him, he argues that any evidence obtained as a result of that stop is not admissible.
 {¶ 7} When addressing a suppression ruling, a reviewing court defers to the finder of fact as long as those facts are supported by competent, credible evidence. State v. Gibson (Mar. 17, 2000), Ross App. No 99 CA 2516, citing State v. Medcalf. If the court's findings of fact are supported by credible competent evidence, the reviewing court then reviews the court's application of the law to those facts under a de novo standard.
 {¶ 8} In order for a stop to be proper, the officer must have a reasonable and articulable suspicion that the driver is either engaged in criminal activity or operating his motor vehicle in violation of the law. State v. Howell (Nov. 13, 1995), Warren App. No. CA95-06-057, citing Delaware v. Prouse (1979),440 U.S. 648, 663; State v. Brandenburg (1987), 41 Ohio App.3d 109,110. The reasonableness of the stop is viewed in light of the totality of the surrounding circumstances. Id., citing State v.Bobo (1988), 37 Ohio St.3d 177, 178. The officer stopping the defendant must be able to articulate specific facts which, along with the reasonable inferences arising from those facts, reasonably warrant the intrusion which the stop comprises. Terryv. Ohio (1968), 392 U.S. 1, 21-22.
 {¶ 9} Defendant argues that the officer did not have a reasonable suspicion of illegal activity to justify the stop. The officer testified, however, that he had measured defendant's speed at 48 MPH in a 25 MPH zone with a radar device. The officer also testified that he had been a police officer for thirty years. The officer's experience, coupled with the readout from the radar device, provide a reasonable suspicion that defendant was operating his motor vehicle in violation of the law. This portion of the assignment of error is without merit.
 {¶ 10} Defendant also argues that his arrest for drunk driving was improper. He states the issue as follows:
 {¶ 11} Whether the arresting officer conducted an improper arrest of the appellant for driving under the influence of alcohol; [sic] thus rendering all subsequently obtained evidence the fruit of an unconstitutional search and seizure in violation of the rights guaranteed appellant by the fourth andfourteenth amendments to the united states constitution and Article I, Section 14 of the ohio constitution.
 {¶ 12} Defendant argues that the arresting officer lacked probable cause to arrest him for driving under the influence of alcohol. "Because an arrest is the ultimate intrusion upon a citizen's liberty, the arresting officer must have more than a reasonable, articulable suspicion of criminal activity. He must have probable cause to believe the individual has committed a crime." State v. Evans (1998), 127 Ohio App.3d 56, 64.
 {¶ 13} Further, "[a]n arrest without a warrant is constitutionally invalid unless the arresting officer had probable cause to make it at that time. To have probable cause, the arresting officer must have sufficient information derived from a reasonably trustworthy source to warrant a prudent man in believing that a felony has been committed and that it has been committed by the accused." State v. Timson (1974),38 Ohio St.2d 122, paragraph one of the syllabus.
 {¶ 14} Similarly, for an arrest for driving under the influence or with an illegal alcohol level, in determining whether an arresting officer had probable cause to arrest a defendant for driving with an alcohol blood level above the legal limit, the court must address the facts available to the officer at the time of the arrest. If, at the moment of the arrest, the facts and circumstances were trustworthy enough to induce a prudent person to believe that the defendant indeed had a blood alcohol above the legal limit while driving, then the officer had probable cause for the arrest. Beck v. Ohio (1964),379 U.S. 89, 91. If, however, the officer lacked probable cause to arrest, then any evidence obtained as a result of that arrest is inadmissible. State v. Timson (1974), 38 Ohio St.2d 122, paragraph two of the syllabus.
 {¶ 15} Following an adverse ruling on a suppression motion, there are three methods to challenge the trial court's ruling. First, the appealing party may challenge the findings of fact. This challenge requires the reviewing court to decide whether the court's findings are against the manifest weight of the evidence.State v. Barrett (Feb. 26, 2001), Licking App. No. 00CA-47, 2001 Ohio App. LEXIS 692, at *4. "Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court may reverse the trial court for committing an error of law." Id. If the trial court has not erred in its findings of fact and "has properly identified the law to be applied," the appealing party can still challenge the court's final determination in its ruling on the law. Id.
 {¶ 16} When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. * * * As the United States Supreme Court held in Ornelas v. U.S. (1996), 517 U.S. 690,116 S.Ct. 1657, 134 L.Ed.2d 911, "as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 17} Id. at *4-5.
 {¶ 18} In reviewing drunk driving cases, the courts have traditionally evaluated the totality of the facts and circumstances. State v. Medcalf (1996), 111 Ohio App.3d 142,147. "An arrest for driving under the influence need only be supported by the arresting officer's observations of indicia of alcohol consumption and operation of a motor vehicle while under the influence of alcohol." Id, citations omitted. In determining whether adequate indicia existed at the time of the arrest, the courts examine a number of factors:
 {¶ 19} * * * [T]hese factors include, but are not limited to: (1) the time and day of the stop (Friday or Saturday night as opposed to, e.g., Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (speeding, weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong, "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. All of these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer acted reasonably. No single factor is determinative.
State v. Evans (1998), 127 Ohio App.3d 56, 63, fn. 2.
 {¶ 20} The first question, then, is whether the court's findings were against the manifest weight of the evidence. The officer testified that defendant "appeared to be intoxicated." The only facts the officer cited to support his statement that defendant appeared intoxicated was, "His eyes were dilated. He had an odor of alcoholic beverage on his breath. * * * I asked him if he had been drinking. He said yes. He had one drink." Id.
 {¶ 21} The officer, who had been a policeman for thirty years, also testified that he has made thousands of DUI arrests. He stated that he "tested [defendant] on the probable cause device, the portable breath analyzer. And in my estimate and the totality of the circumstances, lead me to arrest him for the DUI." Tr. 9. He agreed with the prosecutor's statement that because of the results of the breath analyzer, which he has used for seven or eight years, along with defendant's driving, demeanor, smell of alcohol and his dilated eyes, he believed that defendant was "substantially impaired" such that he could not safely operate a motor vehicle.
 {¶ 22} The officer admitted on cross-examination that defendant did not weave, that he properly executed a lane change including using his signal, that he was cooperative, that he did not fumble when retrieving his driver's license, and that he was steady and did not sway or weave when standing outside the vehicle. The officer admitted, moreover, that he did not administer the field sobriety tests until after he arrested defendant. He decided to arrest "because he was intoxicated." Tr. 20. The officer repeatedly referenced his years of experience in arresting drunk drivers.
 {¶ 23} The officer also admitted that he was aware that the breath analyzer he used was not approved by the Ohio Department of Health, that he did not have any calibration records for that analyzer with him in court, and that he could not remember the manufacturer of the device. He also testified that the field sobriety tests, administered after the arrest when the defendant was back at the station, are subjective tests which do not have numbered clues, so that the results are "based on experience and common sense." Tr. at 28. He stated that all the test results are subjective and denied any objective criteria for interpreting the sobriety tests. The officer also admitted that he arrested defendant after observing him for less than two minutes.
 {¶ 24} The issue, therefore, is whether the officer's observations were adequate to provide probable cause for the arrest. The videotape of the arrest shows that the officer arrested defendant immediately after taking the breath analyzer reading. The trial court ruled that this reading was not admissible. The only reason the court gave for barring this evidence was "on some point that defense counsel raised." Tr. at 70. We note, however, that several courts have barred the portable breath analyzer tests for probable cause purposes. As the Third Appellate District explained, "the results of the PBT are inadmissible because the Ohio Department of Health no longer recognizes the test. Therefore, the results of the * * * PBT could not serve as probable cause to arrest the appellant for driving under the influence of alcohol." State v. Ferguson,
Defiance App. No. 4-01-34, 2002-Ohio-1763. See also State v.Anez (2000), 108 Misc.2d 18; State v. Keith, Guernsey App. No. 02CA01, 2003-Ohio-2354 (where officer did not identify type of portable analyzer he used.)
 {¶ 25} Without that test, we are left with limited evidence of intoxication. The videotape shows that defendant walked steadily, spoke clearly, and followed the officer's orders promptly. Defendant was not driving erratically when he was stopped. And when he was told to exit his vehicle, he did not stumble or weave. Police had not received a report that defendant was intoxicated, nor was there any testimony that his eyes were bloodshot or glassy, though they were dilated. The officer did not report any slurred speech. He did state there was the smell of alcohol on defendant's breath. Defendant readily admitted to drinking one cocktail, but the record does not indicate at what time he had it. Few, if any, of the factors listed in Evans,
supra, therefore, justified the arrest for drunk driving.
 {¶ 26} For an arrest for driving while intoxicated or with an excessive blood alcohol to be valid, a suspect need not display every possible indication that he is intoxicated. State v.Barrett (Feb. 26, 2001), Licking App. No. O0CA-47. Nonetheless, the courts require the officer to administer field sobriety tests or to have sufficient indication of intoxication before an arrest is made.
 {¶ 27} "`Once the officer has stopped the vehicle for some minor traffic offense and begins the process of obtaining the offender's license and registration, the officer may then proceed to investigate the detainee for driving under the influence if he or she has a reasonable suspicion that the detainee may be intoxicated based on specific and articulable facts, such as where there are clear symptoms that the detainee is intoxicated." 1996 Ohio App. LEXIS 3361 at *8.'" State v. Evans, quotingState v. Yemma, (Aug. 9, 1996), Portage App. No. 95-P-0156, 1996 Ohio App. LEXIS 3361.
 {¶ 28} Nonetheless, "an analysis of an investigatory stop leading to an arrest requires careful attention to each stage of the detention in order to make sure that the extent of the intrusion represented by each stage is warranted by the officer's reasonable and articulable suspicion at that point." State v.Spillers (Mar. 24, 2000), Darke App. No. 1504, 2000 Ohio App. LEXIS 1151, at *7.
 {¶ 29} Investigating a detainee for possible inebriation includes administering field sobriety tests like the "finger to nose" test, the Horizontal Gaze Nystagmus test (HGN), the "walk and turn" test, and the "one leg stand" test. The portable breath analyzer test has, in the past, also been considered a test providing probable cause. Except for the breath analyzer test, which has been barred for consideration for probable cause, the officer used none of these tests prior to arresting defendant.
 {¶ 30} As Judge Fain has noted, "The law prohibits driving under the influence of alcohol; it does not prohibit driving after the mere consumption of an alcoholic beverage." U.S. v.Frantz (2001), 177 F. Supp.2d 760, 762, quoting State v.Spillers 2000 Ohio App. LEXIS 1151, at *3; see also State v.Dixon 2000 Ohio App. LEXIS 5661, at * 2; State v. Taylor
(1981), 3 Ohio App.3d 197, 198. As the court in Dixon noted, just the smell of alcohol is not enough to establish driving under the influence. Nor is the defendant's admission of having had a drink. In Frantz, the court noted that glassy or bloodshot eyes, along with the smell of alcohol and an admission of having had a drink, may not be sufficient to arrest but are sufficient to merit further investigation in the form of field sobriety tests. Frantz at 763.
 {¶ 31} In a case similar to the case at bar, the Second Appellate District found that when a defendant had admitted to having a couple of beers, had glassy, bloodshot eyes, gave off a strong odor of alcohol, and was speeding well in excess of the speed limit, "[a]lthough these facts, by themselves, may not rise to the level of probable cause for an arrest, they are sufficient to justify the lesser intrusion of requiring [the defendant] to perform field sobriety tests." State v. Cooper, Clark App. No. 2001-CA-86, ¶ 25; State v. Cowell, Montgomery App. No. 19119, 2002-Ohio-5126, holding that the officer's hearing defendant's truck hit the curb, coupled with an odor of alcohol, an admission to having two or three beers, and the presence of a can of beer in the passenger door was sufficient to justify asking defendant to perform field sobriety tests. See also State v. Downey
(1987), 37 Ohio App.3d 45; State v. Evans, (1988)127 Ohio App.3d 56. In the case at bar, the officer did not perform the sobriety tests until after the arrest.
 {¶ 32} An arrest for driving while intoxicated can never be made without sobriety tests first being performed, if there are sufficient indicia of intoxication apart from any sobriety tests.State v. Homan (2000), 89 Ohio St.3d 421. Thus the totality of the circumstances may support the finding that probable cause existed for an arrest even without a field sobriety test. Id. "These cases are inherently fact-sensitive." Cooper, supra.
 {¶ 33} On the other hand, the First Appellate District found that speeding and the odor of alcohol, without more, did not provide probable cause to arrest. State v. Taylor (1981),3 Ohio App.3d 197. The Fourth Appellate District court also found that bloodshot eyes, a little difficulty exiting a vehicle, less than fluid speech, admission to having a couple of drinks, without an observation of erratic driving, was insufficient to provide probable cause for an arrest. State v. Theiss (Dec. 17, 2001), Athens App. No. 01CA37, 2001-Ohio-2630.
 {¶ 34} In a case in which no traffic violation occurred, but rather the defendant's car lacked a license plate light, the court found that because the officer "did not observe erratic or impaired driving on the part of" the defendant, who did not "appear to have any problem pulling the vehicle to the side of the road," the mere presence of bloodshot and watery eyes and moderate odor of alcohol did not justify an arrest for driving under the influence of alcohol. Despite the defendant's poor performance on the HGN test, from the totality of the circumstances, the court could not "rationally conclude that there was probable cause to arrest * * *." State v. Sanders,
Marion App. No. 9-2000-56, 2000-Ohio-1813, 2000 Ohio App. LEXIS 6232, *7-8. But see State v. Ousley (Sept. 20, 1999), Ross App. No. 99CA-2476, 1999 Ohio App. LEXIS 4459, at *7-8.
 {¶ 35} In the case at bar, although defendant was speeding, the videotape shows no erratic driving. Rather, defendant safely maneuvered his car from the left lane to the right, using his turn signal, turned onto a side street, again using his turn signal, and pulled into a parking lot with no difficulty. The officer stated merely that he knew defendant was intoxicated without any other indicia than the speeding and the dilated pupils. These circumstances do not justify an arrest for driving under the influence of alcohol.
 {¶ 36} In State v. Dixon (Dec. 1, 2000), Greene App. No. 2000-CA30, the court held that the smell of alcohol, along with glassy, bloodshot eyes and the admission that the defendant had one or two beers was insufficient to justify even administering the field sobriety tests. Although the defendant in Dixon had not committed a traffic violation but rather was stopped for tinted windows, the facts in Dixon are otherwise similar to the case at bar.
 {¶ 37} The determination of whether probable cause existed to arrest for driving while intoxicated, as we previously noted, is very fact specific. In the case at bar, after reviewing the videotape of defendant's arrest, and, even taking into consideration the fact that the videotape could not convey the strong smell of alcohol the officer noted on defendant, we find that at the time of the arrest, the officer lacked sufficient evidence of intoxication to provide probable cause to justify an arrest for drunk driving. This assignment of error has merit.
 {¶ 38} Because the arrest was improper, the evidence resulting from the arrest was not admissible. We conclude that the trial court erred in overruling defendant's motion to suppress the evidence. This case is reversed and remanded for further proceedings consistent with this opinion.[1]
 {¶ 39} This cause is reversed and remanded.
It is, therefore, ordered that appellant recover of appellee his costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., Concurs.
 Dyke, P.J., Concurs in Judgment only.
[1] This court's decision in Assignment of Error I renders the remaining issues moot.
3. Whether the trial court erred in failing to suppress evidence at trial the results [SIC] of appellant's performance on the one leg stand test, the walk and turn test, the fingers to nose test, and the alphabet test based upon the arresting officer's failure to administer and evaluate said tests in strict compliance with the national highway traffic safety administration or N.H.T.S.A. Standards Governing Standardized Field Sobriety Testing.
4. Whether the arresting agency administering the test of appellant's breath alcohol level substantially complied with Ohio Administrative Code Section 3701-53-04(a)(2).
5. Whether the arresting agency administering the test of appellant's breath alcohol level substantially complied with Ohio Administrative Code Section 3701-53-04.
5. Whether the arresting agency administering the test of appellant's breath alcohol level substantially complied with Ohio Administrative Code Section 3701-53-04(e).
7. The state of ohio has failed to substantially comply with the time limits and Regulations in R.C. 4511.19(B) and OAC3701-53-02, including the operator's checklist instructions issued by the Ohio Department of Health included in the Appendices to OAC 3701-53-02.