DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant, Elwarius Hunter appeals from the denial of his motion to suppress by the Lorain County Court of Common Pleas. We affirm.
 {¶ 2} On February 2, 2005, the Lorain County Grand Jury indicted Defendant on four separate counts: (1) trafficking in drugs, in violation of R.C. 2925.03(A)(1); (2) possession of drug abuse paraphernalia, in violation of R.C. 2925.14(C)(1); (3) possession of drugs, in violation of R.C. 2925.11(A); and (4) permitting drug abuse in a motor vehicle, in violation of R.C.2925.13(A). Defendant pled not guilty to all charges on February 16, 2005. On April 15, 2005, Defendant filed a motion with the court seeking to suppress a bottle of Oxycontin found in the vehicle he was driving when arrested. The trial court held a hearing on the motion to suppress on June 20, 2005, and denied Defendant's motion on September 23, 2005. Following the trial court's September 23, 2005 ruling, Defendant withdrew his not guilty pleas and entered pleas of no contest to the charges. Defendant was sentenced on January 9, 2006. Defendant timely appealed the trial court's denial of his motion to suppress, raising one assignment of error for review.
 Assignment of Error
"The trial court erred when it denied [Defendant's] motion to suppress evidence obtained as the result of an unreasonable seizure and search, in violation of the Fourth Amendment of the United States"
 {¶ 3} In Defendant's sole assignment of error, he argues that the trial court erred in denying his motion to suppress. Specifically, Defendant contends that (1) the arresting officers did not have sufficient cause to initially stop his vehicle; (2) the scope of the initial detention was not supported by a reasonable or articulable suspicion that Defendant was engaged in criminal activity; and (3) Defendant did not freely consent to the search of his vehicle.
 {¶ 4} A trial court makes both factual and legal findings when ruling on a motion to suppress. State v. Jones (Mar. 13, 2002), 9th Dist. No. 20810, at *1. An appellate court is to accept the trial court's findings of fact that are supported by credible evidence, as the trial court is in the best position to evaluate questions of fact, credibility, and weight of the evidence. State v. Miller (May 23, 2001), 9th Dist. No. 20227, at 5. However, the ultimate question of whether an officer had reasonable suspicion to make an investigatory stop is to be reviewed by an appellate court de novo. Jones, at *1, citingOrnelas v. United States (1996), 517 U.S. 690, 699.
1. The Initial Stop
 {¶ 5} "A law enforcement officer must have a reasonable, articulable suspicion that a person is or has been engaged in criminal activity before he is justified in stopping a vehicle."State v. VanScoder (1994), 92 Ohio App.3d 853, 855,637 N.E.2d 374, citing Terry v. Ohio (1968), 392 U.S. 1, 21-22. After identifying the facts known to the police officer at the time of the stop, an appellate court must decide whether, under a standard of objective reasonableness, those facts would give rise to reasonable suspicion justifying a stop. Ornelas, at 696-697. "No further inquiry beyond the requirement of reasonable suspicion is necessary or warranted." State v. Carlson (1995),102 Ohio App.3d 585, 593, 657 N.E.2d 591. Thus, if the specific and articulable facts available to an officer indicate that a motorist may be engaging in criminal activity, the stop is justified. Id.
 {¶ 6} In determining whether a stop was objectively reasonable, the court must consider the totality of the circumstances. State v. Anderson (1995), 100 Ohio App.3d 688,692, 654 N.E.2d 1034. "[T]he circumstances surrounding the stop must `be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" State v. Bobo (1988), 37 Ohio St.3d 177, 179,524 N.E.2d 489, quoting United States v. Hall (C.A.D.C. 1976), 525 F.2d 857, 859. Facts which could be given an innocent interpretation will support the decision to briefly detain someone for questioning, "so long as one may rationally infer from the totality of the circumstances that the person may be involved in criminal activity." Jones, at ¶ 21, citing UnitedStates v. Cortez (1981), 449 U.S. 411, 417-418.
 {¶ 7} In Bobo, the Ohio Supreme Court determined that the officers in question had reasonable suspicion to conduct an investigatory stop based upon a combination of factors, each with a possibly innocent explanation. The court concluded that the reputation of an area for criminal activity, coupled with the time of day, the experience level of the officers involved, their knowledge of how drug transactions occur, suspicious gestures or movements by occupants of a vehicle, and the officers' experience as to what such movements mean can, in their totality create reasonable suspicion of criminal activity. Bobo, at 179-180.
 {¶ 8} Applying Bobo to the facts of this case leads to the conclusion that the investigatory stop of Defendant was proper. The State points to several factors in support of its contention that the officers had reasonable suspicion to stop the Defendant.
 {¶ 9} Officer Greiner, a seven year veteran, testified that (1) the vehicle was identified as a "vehicle of interest" by the Lorain County Drug Task Force (the "Task Force"); (2) Officer Abbott of the Task Force had observed Defendant's car and told him that Defendant was driving erratically; (3) he had observed the Defendant cross over the center line of the road twice and across the berm line once within a 1.5 to 2 mile stretch of road; and (4) marked lane violations are often a sign of an intoxicated driver.
 {¶ 10} A tip from a police officer constitutes a reasonable and articulable suspicion of criminal activity. State v. Ramey
(1998), 129 Ohio App.3d 409, 413, 717 N.E.2d 1153. In Ramey, a police officer based a traffic stop on a radio transmission from another police officer, who stated that a passerby had told him that a car of certain license plate, color, and make "was `a possible DUI.'" Id. The police officer later stopped the vehicle in question based on this information. The court of appeals held that the information was not based on an anonymous tip that required further corroboration.
 {¶ 11} R.C. 4511.33(A)(1) states in relevant part: "Whenever any roadway has been divided into two * * * clearly marked lanes for traffic, * * * [a] vehicle * * * shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic. "Crossing a road's right edge line is a traffic violation pursuant to R.C. 4511.33(A)." State v. Casas Vela
(Feb. 7, 1996), 9th Dist. No. 2451-M and 2452-M, at 1. In Statev. Burton, the officer observed the defendant "drive directly on the double yellow line with his left tires for two to three seconds before he went back into his lane of travel." State v.Burton, 12th Dist. No. CA2005-12-528, 2006-Ohio-4048, at ¶ 8. The appellate court found that "the officer witnessed what appeared to be a traffic violation and therefore had probable cause to stop [the defendant]." Id.
 {¶ 12} When each of the above factors is viewed together as appraised by an experienced police officer, they provide clear justification to stop Defendant's car and pursue a limited investigation. Terry, at 21, 22; State v. Freeman (1980), 64 Ohio St.2d 291, 294, 414 N.E.2d 1044.
 {¶ 13} In ascertaining whether a stop is objectively reasonable, this court must ask: "[W]ould the facts available to the officer at the moment of the seizure or the search `warrant a man of reasonable caution in the belief' that the action taken was appropriate?" Terry, at 22. Under the facts of this case, we find that a reasonable and prudent police officer who observed Defendant's movements, driving pattern, and had a tip from another officer who had observed the same behavior would have reasonable suspicion to believe that Defendant was engaged in criminal activity.
 {¶ 14} Moreover, the United States Supreme Court has held that a traffic stop is lawful, regardless of an officer's motives in stopping a vehicle, so long as a reasonable officer could stop the vehicle for a traffic violation. See Whren v. United States
(1996), 517 U.S. 806, 809. As set forth above, Defendant violated R.C. 4511.33. Thus, Officer Greiner could have made a traffic stop of Defendant's car as well as an investigatory stop.
2. The Scope of the Detention
 {¶ 15} Defendant contends that even assuming the stop of his car was proper, the police were not justified by a reasonable and articulable suspicion in detaining him to administer field sobriety tests and/or investigate whether or not the vehicle was stolen. We disagree
 {¶ 16} Generally, de minimis lane violations and small marked lane errors alone are not sufficient to justify the administration of field sobriety tests. State v. Spillers (Mar. 24, 2000), 2nd Dist. No. 1504, at 3; United States v. Frantz
(2001), 177 F.Supp.2d 760. However, in this case, Officer Greiner personally observed Defendant crossing outside the lane three times and he had a tip from the Task Force officer that Defendant was driving erratically and was a vehicle of interest. This properly constitutes a reasonable and articulable suspicion that Defendant was drinking, thus properly enabling Officer Greiner to conduct field sobriety tests.
 {¶ 17} Similarly, the officers had a reasonable and articulable suspicion of criminal activity sufficient to justify the Defendant's detention related to the ownership and use of the vehicle he was driving. While Defendant readily admitted the car did not belong to him and properly identified the owner of the vehicle,[1] Defendant was not the owner of the vehicle. Moreover, given that Officer Greiner had a tip from the Task Force that the car was a "vehicle of interest," and driving erratically, and he personally observed lane violations, both of which could be construed to have been due to lack of familiarity with the vehicle and/or behavior associated with having committed a crime, this court finds that the detention of Defendant to conduct further investigation to determine whether the vehicle was stolen was justified by a reasonable and articulable suspicion of criminal activity.
3. Consent
 {¶ 18} Defendant finally asserts that because of the nature of the stop, his consent to search the vehicle was not an independent act of free will given during an illegal detention. We disagree.
 {¶ 19} Given our holding above, that Defendant's detention was not illegal, it is unnecessary for this Court to consider whether or not Defendant's consent was an independent act of free will. State v. Bennett (June 21, 2000), 4th Dist. No. 99CA2509, at *4. Instead, this Court need only decide whether, under the totality of the circumstances, the individual consented to the search. Id. There is no evidence that Defendant's age, intelligence, education or physical condition prohibited him from voluntarily consenting to the search. Defendant was an adult man, familiar with the criminal justice system. There is no evidence that Defendant was intimidated by the officers or that his consent was coerced. Under the totality of the circumstances, we find that the Defendant's consent was voluntarily given.
 {¶ 20} Accordingly, we overrule Defendant's assignment of error and affirm the decision of the Lorain County Court of Common Pleas
Judgment Affirmed
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Boyle, J. concurs.
Carr, P.J. concurs in judgment only.
(Reece, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to § 6(C), Article IV, Constitution.)
[1] We note that the trial court's judgment entry indicates that Defendant did not identify the true owner of the vehicle. This is contrary to the record. The State acknowledges the trial court's error in its brief.