DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Julius J. Balog, Jr., appeals from the denial of his motion to suppress in the Wadsworth Municipal Court. This Court affirms.
 I {¶ 2} In the early morning hours of May 5, 2007, Officer Jared Prill of the Village of Seville Police Department stopped Balog for a traffic infraction. Officer Prill witnessed Balog cross over the center line of Wooster Pike Road on his motorcycle while executing a left hand turn. He further witnessed Balog drift left of center while driving along the same road. Consequently, Officer Prill activated his police cruiser's overhead lights and stopped Balog. Officer Prill approached Balog and became convinced that Balog was intoxicated based on his appearance, odor, and statements. Accordingly, Officer Prill performed several field sobriety tests. Balog's performance on the tests led Officer Prill to arrest Balog. Balog failed to complete a breathalyzer test in the field, but consented to a urine test once back at the station. *Page 2 
 {¶ 3} Balog was charged with a violation of R.C. 4511.33(A) for crossing a marked lane left of center and for operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(1)(e). On July 25, 2007, Balog filed a motion to suppress arguing that Officer Prill lacked probable cause to stop or arrest him, lacked reasonable suspicion to perform a field sobriety test, failed to follow the proper field sobriety test procedures, and violated his Miranda rights. Balog also asked the court to suppress the results of his urine test because of various collection and chain of custody issues.
 {¶ 4} The trial court held a hearing on Balog's motion to suppress on August 31, 2007. On October 18, 2007, the court denied Balog's motion. Subsequently, Balog entered a plea of no contest, and the court found Balog guilty. The court sentenced Balog to jail time, a suspended license, and a fine.
 {¶ 5} On January 28, 2008, Balog filed his notice of appeal. This Court dismissed Balog's appeal for lack of a final, appealable order on April 28, 2008. On May 14, 2008, however, we reinstated Balog's appeal upon reconsideration. Balog's appeal is now properly before this Court and raises one assignment of error for our review.
 II Assignment of Error "THE TRIAL COURT ERERD (sic) BY DENYING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE OF THE FIELD SOBRIETY TEST RESULTS, URINE TEST RESULTS, AND OBSERVATIONS OF THE OFFICER, WHERE THE POLICE LACKED REASONABLE SUSPICION OR PROBABLE CAUSE TO MAKE THE TRAFFIC STOP, CONDUCT THOSE VARIOUS TESTS, AND TO ARREST DEFENDANT-APPELLANT FOR AN OVI OR SIMILAR OFFENSE AND WHERE THE FIELD SOBRIETY TESTS WERE NOT CONDUCTED IN SUBSTANTIAL COMPLIANCE WITH THE APPLICABLE TESTING STANDARDS AND THE YURINE (sic) TEST WAS NOT CONDUCTED IN ACCORDANCE WITH OHIO DEPARTMENT OF HEALTH STANDARDS." *Page 3 
 {¶ 6} In his sole assignment of error, Balog argues that the trial court erred in denying his motion to suppress. Specifically, he argues that: (1) his de minimus lane violation did not give rise to reasonable suspicion to effectuate a traffic stop; (2) the "mere appearance" of his having consumed alcohol did not give rise to reasonable suspicion to conduct a field sobriety test or probable cause for his arrest; (3) Officer Prill failed to administer the field sobriety tests in substantial compliance with the National Highway Traffic Safety Administration ("NHTSA") testing standards; and (4) the State failed to prove that Officer Prill and Criminalist Jeff Turnau of the State Highway Patrol substantially complied with the Ohio Administrative Code standards applicable to taking, storing, and testing urine samples. We disagree.
 {¶ 7} In making its ruling on a motion to suppress, the trial court makes both legal and factual findings. State v. Jones (Mar. 13, 2002), 9th Dist. No. 20810, at *1. It follows that this Court's review of a denial of a motion to suppress involves both questions of law and fact.State v. Long (1998), 127 Ohio App.3d 328, 332. As such, this Court will accept the factual findings of the trial court if they are supported by some competent and credible evidence. State v. Searls (1997),118 Ohio App.3d 739, 741. However, the application of the law to those facts will be reviewed de novo. Id.
Traffic Stop {¶ 8} A traffic stop constitutes a seizure under the Fourth Amendment.Whren v. United States (1996), 517 U.S. 806, 809-10. An investigative traffic stop does not violate the Fourth Amendment where an officer has reasonable suspicion that the individual is engaged in criminal activity. Maumee v. Weisner (1999), 87 Ohio St.3d 295, 299. To justify an investigative stop, an officer must point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. quoting Terryv. *Page 4 Ohio (1968), 392 U.S. 1, 21. A court must consider the totality of the circumstances in evaluating the facts and inferences supporting the stop. State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus. "[I]f the specific and articulable facts available to an officer indicate that a driver may be committing a criminal act, which includes the violation of a traffic law, the officer is justified in making an investigative stop." State v. Hoder, 9th Dist. No. 03CA0042,2004-Ohio-3083, at ¶ 8, quoting State v. Shook (June 15, 1994), 9th Dist. No. 93CA005716, at *2.
 {¶ 9} R.C. 4511.33(A)(1) provides, in relevant part, that "[w]henever any roadway has been divided into two or more clearly marked lanes for traffic * * * [a] vehicle * * * shall be driven, as nearly as practicable, entirely within a single lane or line of traffic[.]" Moreover, R.C. 4511.36(A)(2) provides, in part, that a driver of a vehicle intending to execute a left-hand turn at an intersection shall do so by turning, and after entering the intersection, by "leav[ing] the intersection to the right of the center line of the roadway being entered." A violation of either section constitutes a misdemeanor, the degree of which depends upon the presence or absence of one or more predicate motor vehicle or traffic offenses. R.C. 4511.33(B); R.C. 4511.36(D).
 {¶ 10} Balog argues that Officer Prill lacked reasonable suspicion to conduct a traffic stop because Balog only committed a de minimus lane violation. Balog points this Court to State v. Phillips, 3rd Dist. No. 8-04-25, 2006-Ohio-6338, to support the proposition that de minimus lane violations do not give an officer to reasonable suspicion effectuate a traffic stop.
 {¶ 11} In Phillips, the Third District determined that an officer who witnessed a driver cross the right, white edge line of the road did not have probable cause to stop the driver's vehicle because "crossing the right white edge line [of the road] is not a violation of R.C. 4511.33(A)(1)." Phillips at ¶ 38. The court warned, however, that "we explicitly limit our *Page 5 
holding to vehicles which only cross the right white edge line, commonly known as the fog line, on a divided two-lane roadway." Id. at ¶ 50. Further, the Third District recently clarified its decision inPhillips in State v. Moore, 3rd Dist. No. 9-07-60, 2008-Ohio-2407, at ¶ 6-19. The court held that while a driver's crossing of the white edge line is not a per se R.C. 4511.33(A)(1) violation giving rise to probable cause for a traffic stop, the improper crossing could give an officer reasonable suspicion to stop the driver in certain instances. Id. at ¶ 15 (citing to the distance a driver has traveled over the edge line, the length of the deviation, and whether the vehicle's movement raised the officer's suspicion as to whether the driver was tired or intoxicated). As such, the case law from the Third District does not support Balog's conclusion that de minimus lane violations can never establish reasonable suspicion for a traffic stop.
 {¶ 12} More importantly, Officer Prill stopped Balog because he witnessed Balog cross the center line of road, not the road's white edge line. Officer Prill testified at the suppression hearing that he first saw Balog on his motorcycle at the intersection of Greenwich Road and Wooster Pike Road in Medina. Officer Prill was stopped at the traffic light at the northern side of the intersection, waiting to continue traveling southbound on Wooster Pike Road. While waiting, he saw Balog, traveling west on Greenwich Road, approach the intersection on his motorcycle. Balog executed a left-hand turn at the intersection, turning south on Wooster Pike Road directly in front of Officer Prill's cruiser. Officer Prill testified that both Greenwich Road and Wooster Pike Road have one straight-through lane and one turning lane at their respective intersections. From his position on Wooster Pike Road, Officer Prill saw Balog cross the center line of Wooster Pike Road on his southbound turn, traveling into the Road's northbound left-turning lane. Officer Prill described the turn as "real wobbly." Accordingly, he waited until his traffic light turned green and proceeded through the intersection to follow Balog. After passing *Page 6 
through the intersection, Officer Prill activated his overhead lights to stop Balog based on his marked lane violation. Officer Prill testified that Balog "drifted left of center several times as [he] was getting ready to make the traffic stop[.]"
 {¶ 13} Based on the aforementioned testimony, we find that the trial court did not err in determining that Officer Prill's traffic stop did not amount to an unconstitutional seizure. "[T]he United States Supreme Court has held that a traffic stop is lawful, regardless of an officer's motives in stopping a vehicle, so long as a reasonable officer could stop the vehicle for a traffic violation." State v. Hunter, 9th Dist. No. 06CA008871, 2006-Ohio-5810, at ¶ 14, citing Whren, 517 U.S. at 809. Furthermore, this Court has previously held that when a driver violates R.C. 4511.33(A)(1) by crossing the center line that violation constitutes a proper basis for a traffic stop. Hunter at ¶ 14. Balog's first argument lacks merit.
Field Sobriety Tests {¶ 14} An officer need not have probable cause to conduct a field sobriety test. State v. Osburn, 9th Dist. No. 07CA0054, at ¶ 9, quotingWadsworth v. Engler (Dec. 15, 1999), 9th Dist. No. 2844-M, at *3. Reasonable suspicion, the ability to point to "specific and articulable facts indicating that a driver may be committing a criminal act[,]" will justify the administration of such a test. Osburn at ¶ 9, quotingEngler at *3.
 {¶ 15} Balog argues that Officer Prill lacked reasonable suspicion to conduct any field sobriety tests under the totality of the circumstances because the mere odor of an alcoholic beverage does not create reasonable suspicion. Balog cites to State v. Spillers (Mar. 24, 2000), 2d Dist. No. 1504, for the proposition that the mere odor of alcohol, when combined with a de minimus traffic violation, does not constitute reasonable suspicion to perform a field sobriety test. InSpillers, however, the defendant had only a "slight" odor of alcohol and had committed a *Page 7 
single traffic violation for weaving within his own lane of travel.State v. Castle, 2d Dist. No. 21698, 2007-Ohio-5165, at ¶ 10-14
(distinguishing Spillers and finding reasonable suspicion existed on the basis of a strong smell of alcohol and lane change violations). The facts here are clearly distinguishable from those in Spillers.
 {¶ 16} During the suppression hearing, Officer Prill testified that he stopped Balog for a marked lane violation. As we have already determined, such a violation does not merely amount to a "de minimus" violation. Further, Officer Prill testified that when he approached Balog's motorcycle, he immediately noticed a "[s]trong odor of alcoholic beverage; disheveled appearance; [and] bloodshot, glassy eyes." Officer Prill asked Balog if he had been drinking, and Balog responded in the affirmative. Balog initially stated that he had consumed "a beer[,]" but then admitted to also drinking "Jack and Coke[.]" Under the totality of the circumstances, we cannot agree that the trial court erred in concluding that Officer Prill properly sought to administer field sobriety tests upon Balog based on his reasonable suspicion that Balog was intoxicated.
 {¶ 17} Next, Balog challenges Officer Prill's execution of the field sobriety tests. He argues that the State failed to prove by clear and convincing evidence that Officer Prill administered the tests in substantial compliance with the NHTSA manual. See State v. Brown (Mar. 10, 2006), 11th Dist. No. 2004-T-0123. Yet, the record evinces that Balog did not suffer any prejudice as a result of any minor errors that Officer Prill might have made while conducting the field sobriety tests.
 {¶ 18} Officer Prill testified that he first attempted to perform a horizontal gaze nystagmus ("HGN") test on Balog. He stopped performing the test, however, when he saw Balog's "eyes beg[i]n to roll back in his head" because he feared that Balog might pass out. He *Page 8 
stated that Balog swayed back and forth during the administration of the test and appeared to be having difficulty maintaining his balance. Next, Officer Prill attempted to perform a one-leg stand test. He demonstrated the test for Balog, instructed Balog how to perform it, and received Balog's assent that he understood how to perform it. Officer Prill testified regarding Balog's one-leg test as follows:
 "[Balog] pretty much almost fell over. He got his leg off the ground and instantly dropped it, kind of turned around on himself, and at that point he actually kind of tossed his hands up in the air and said, `That's it. I'm going to jail. Arrest me already.'"
Consequently, the record reflects that Balog essentially quit the one-leg stand test before Officer Prill even finished administering it. Moreover, as discussed below, we agree with the trial court's determination that the field sobriety tests were not necessary for a determination of probable cause in this instance. As such, Balog cannot demonstrate prejudice as a result of Officer Prill's field sobriety test administration.
Probable Cause to Arrest {¶ 19} In Kurjian, this Court defined probable cause as follows:
 "Probable cause [to] arrest for driving under the influence exists if, at the moment of the arrest, the totality of the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the suspect had violated R.C. 4511.19. In order to have valid probable cause to arrest a driver for driving under the influence, there must be observations by the officer of indicia of alcohol consumption. However, there is no prerequisite that an officer observe erratic driving in order to effectuate an arrest for driving under the influence." (Internal quotations and citations omitted.) State v. Kurjian, 9th Dist. No. 06CA0010-M, 2006-Ohio-6669, at ¶ 17.
"The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered[.]" State v. Homan (2000), 89 Ohio St.3d 421, 427, superseded by statute on other grounds, R.C. 4511.19. This is because the probable, *Page 9 
rather than the actual, existence of criminal activity governs this Court's probable cause determination. State v. Tejada, 9th Dist. No. 20947, 2002-Ohio-5777, at ¶ 8, quoting State v. Young (2001),146 Ohio App.3d 245, 254.
 {¶ 20} Balog argues that Officer Prill did not have probable cause to arrest him for operating a vehicle under the influence because: (1) there were other explanations for his disheveled appearance and glassy eyes, such as the late hour; (2) proof of the mere consumption of alcohol without additional evidence of impaired driving does not support a probable cause determination; and (3) de minimus lane violations, standing alone, do not rise to the level of probable cause. A probable cause analysis, however, does not proceed upon such a fractured approach.
 {¶ 21} Given the totality of the circumstances, the trial court correctly determined that Officer Prill had probable cause to arrest Balog for operating a vehicle under the influence. Officer Prill witnessed Balog commit a marked lane violation and drift left of center several times before he stopped Balog. Officer Prill smelled the odor of alcohol on Balog, and Balog admitted that he had been drinking. Further, Balog appeared disheveled, had glassy eyes, and swayed back and forth while interacting with Officer Prill during the stop. Officer Prill testified that in his experience Balog's behavior was consistent with that of an intoxicated individual. Contrary to Balog's assertion, it was not necessary that Officer Prill witness erratic driving behavior beyond that of his marked lane violations before concluding that he had probable cause to arrest Balog. See Kurjian at ¶ 17 (noting that erratic driving is not prerequisite to a probable cause determination for an OVI). The record supports Officer Prill's probable cause determination. See Tejada at ¶ 8 (providing that the probable existence of criminal activity supports a probable cause determination). *Page 10 
Lab Testing Standards {¶ 22} For an alcohol-test to be admissible in a prosecution for operating a vehicle under the influence pursuant to R.C. 4511.19, the State must ensure the accuracy of the results by proving that the test procedures set forth in Ohio Admin. Code 3701-53-05 were followed.State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 9-21. The Code specifically requires that a sample's container be labeled with the suspect's name and other identifying information and that the sample be refrigerated "[w]hile not in transit or under examination[.]" Ohio Admin. Code 3701-53-05(E)-(F). Apart from "minor procedural deviations" that "are clearly de minimus[,]" the State must prove substantial compliance with the Code's procedures. Burnside at ¶ 34. Once the State proves substantial compliance a presumption of admissibility attaches to alcohol-test. Id. at ¶ 24. To rebut the presumption, a defendant-challenger must prove that "he was prejudiced by anything less than strict compliance" with the Code. Id.
 {¶ 23} Balog argues that the State failed to demonstrate substantial compliance because there was no evidence that his urine sample was refrigerated in accordance with the Code. He also argues that the sample and property control form relating to the sample bore the name "Balag, Jr." instead of "Balog, Jr."
 {¶ 24} At the suppression hearing, Officer Prill testified that he took Balog's urine sample at approximately 2:40 a.m. on the morning of May 5, 2007. He also mailed the sample to the Ohio State Highway Patrol Crime Lab early that same morning although he could not recall the exact time. Jeff Turnau, a criminalist with the Ohio State Highway Patrol testified that Balog's sample was logged in on May 10, 2007 at 11:32 a.m. Turnau explained the procedure as follows:
 "`Logged in' means the evidence was taken — when evidence arrives, blood or urine specimens, they come in * * * a package for biological specimens, and those *Page 11 
are all immediately refrigerated, and then those boxes are taken out one at a time and the evidence is removed along with the property control form, and information from the form and from the tube is entered into the computer and a laboratory number is assigned by the computer."
Turnau further testified that after a sample is logged in, it is placed back into the refrigerator. He noted that he removed Balog's sample from the refrigerator and tested it on May 14, 2007 at 2:00 p.m. Turnau personally checked the calibration on the instrument he used to test Balog's sample and deemed the instrument operable. He then ran two separate tests using specimens from Balog's sample. Turnau testified that to ensure accuracy, the separate test results must agree within a certain percentage. He confirmed that Balog's results met the percentage standard, and the lab reported the lower of the two numbers. Accordingly, Turnau concluded that Balog had a blood alcohol content of .218 at the time Officer Prill took his urine sample.
 {¶ 25} The record supports the trial court's conclusion that the State substantially complied with the Code's refrigeration requirement. See Ohio Admin. Code 3701-53-05(F). Balog argues that there is no evidence that the sample was refrigerated between May 5, 2007, when Officer Prill mailed the sample, and May 10, 2007, when the Ohio State Highway Patrol Crime Lab logged in the sample. However, Turnau testified that samples are immediately refrigerated after they are received and are logged in one at a time at some later point in time. The Code does not require a sample to be logged in within a certain period of time. See Ohio Admin. Code 3701-53-05. Accordingly, the State did not fail to substantially comply with the Code merely because the lab did not immediately log Balog's sample. Furthermore, the State did not fail to substantially comply as a result of the minor misspelling of Balog's name on the sample and the property control form. Turnau testified that minor misspellings sometimes occur due to the legibility of handwriting and that Balog's sample and the property control form *Page 12 
contained other identifying information. A minor misspelling constitutes nothing more than a de minimus error. See Burnside at ¶ 34.
 {¶ 26} Lastly, there is no evidence in the record that Balog suffered prejudice as a result of any procedural deviation from strict compliance with the Code on the part of the State. See id. at ¶ 24. Turnau, a criminologist with nineteen years experience, testified that he calibrated the instrument that he used to test Balog's sample and ensured that two different specimens tested within a specified percentage of one another. He verified the accuracy of the tests and also specified that Balog's sample and property control form contained other identifying information that he could rely on apart from the minor misspelling in Balog's last name. Accordingly, Balog's last argument lacks merit, and his sole assignment of error is overruled.
 III {¶ 27} Balog's assignment of error is overruled. The judgment of the Wadsworth Municipal Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is *Page 13 
instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30. Costs taxed to Appellant.
CARR, P. J., CONCURS.