[Cite as *State v. Corn*, 2022-Ohio-3095.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | | |

| STATE OF OHIO | | C.A. No. 22CA0010-M |
|---|---|---|
| Appellant | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| MAURICE EDWARD CORN, SR. | | MEDINA MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellee | | CASE No. 21 TRC 01959 |

DECISION AND JOURNAL ENTRY

Dated: September 6, 2022

SUTTON, Judge.

{¶1}    Appellant, the State of Ohio, appeals from the decision of the Medina Municipal Court, granting a motion to suppress filed by Appellee, Maurice Corn.  This Court reverses.

I.

{¶2}    Just before 10:00 p.m. one Sunday evening, Ohio State Highway Patrol Sergeant John Nemastil was traveling northbound on Interstate 71.  He spotted a stopped vehicle on the right berm of the highway and slowed his cruiser.  The stopped vehicle's right turn signal was activated, but its hazard lights were off.  Consistent with his department's policy, Sergeant Nemastil activated his cruiser's lights and pulled behind the stopped vehicle to perform a welfare check.

{¶3}    Sergeant Nemastil approached the stopped vehicle on the passenger's side to speak with the driver, Mr. Corn, and his front seat passenger.  The sergeant detected an odor of alcohol coming from the vehicle and noticed that Mr. Corn had red, bloodshot, and glassy eyes.  He also

noticed that Mr. Corn had an unlit cigarette hanging from his lips and, at different times, slurred his words. Although Mr. Corn admitted to having consumed alcohol that evening, he claimed several hours had elapsed since his last drink. Concerned that Mr. Corn might be impaired, Sergeant Nemastil asked him to step out of the vehicle. He subsequently performed field sobriety testing and arrested Mr. Corn.

{¶4} Mr. Corn was charged with one count of operating a vehicle under the influence of alcohol ("OVI") and one count of OVI with a prohibited blood alcohol concentration. He moved to suppress the evidence against him, arguing that Sergeant Nemastil lacked reasonable suspicion to detain him once his welfare check was complete. The State filed a brief in opposition to Mr. Corn's motion, and the trial court held a hearing. At the conclusion of the hearing, the trial court issued a ruling from the bench as well as a written journal entry. The trial court concluded that Sergeant Nemastil lacked reasonable suspicion for Mr. Corn's continued detention and granted Mr. Corn's motion to suppress.

{¶5} The State now appeals from the trial court's suppression ruling and raises two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE ACTING JUDGE OF THE MEDINA MUNICIPAL COURT ERRED IN GRANTING [MR. CORN'S] MOTION TO SUPPRESS EVIDENCE.

{¶6} In its first assignment of error, the State argues the trial court erred when it granted Mr. Corn's motion to suppress. Specifically, the State challenges the trial court's determination that Sergeant Nemastil lacked reasonable suspicion to extend Mr. Corn's detention beyond its initial purpose. Upon review, this Court sustains the State's first assignment of error.

{¶7} The Supreme Court of Ohio has stated:

> Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Internal citations omitted.) *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

{¶8} Mr. Corn concedes that Sergeant Nemastil lawfully initiated their exchange based on the community caretaking exception to the warrant requirement. *See, e.g., State v. Delong*, 9th Dist. Lorain No. 18CA011306, 2018-Ohio-5262, ¶ 10 (describing community caretaking exception); *State v. Clapper*, 9th Dist. Medina No. 11CA0031-M, 2012-Ohio-1382, ¶ 13 ("[C]ommunity caretaking functions have been recognized in cases where a vehicle is stationary in an area where it should not be parked, as it gives rise to an inference as to the vehicle's or the driver's impairment."). The only question before the trial court was whether it was unlawful for the sergeant to keep detaining Mr. Corn once he concluded his welfare check. Accordingly, this Court limits its review to that issue.

{¶9} "An officer may not prolong a stop for the purpose of conducting inquiries unrelated to the original purpose [for the stop] without 'the reasonable suspicion ordinarily demanded to justify detaining an individual.'" *State v. Iloba*, 9th Dist. Wayne No. 20AP0030, 2021-Ohio-3700, ¶ 9, quoting *Rodriguez v. United States*, 575 U.S. 348, 355 (2015). If, during the stop, "the officer discovers additional facts from which it is reasonable to infer additional criminal activity[,] the officer is permitted to lengthen the duration of the stop to investigate such suspicions." *State v. Williams*, 9th Dist. Lorain No. 09CA009679, 2010-Ohio-3667, ¶ 15. *Accord State v. Robinette*, 80 Ohio St.3d 234, 241 (1997). "The question is whether, under the totality of the circumstances, the officer possessed reasonable suspicion to extend the detention." *State v.*

*Lee*, 9th Dist. Summit No. 29597, 2020-Ohio-4970, ¶ 9. "A totality of the circumstances review includes consideration of '(1) [the] location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances.'" *State v. Kordich*, 9th Dist. Medina No. 15CA0058-M, 2017-Ohio-234, ¶ 7, quoting *State v. Biehl*, 9th Dist. Summit No. 22054, 2004-Ohio-6532, ¶ 14. Reasonable suspicion is based on the facts known to the officer at the time of his investigation. *See State v. Hunter*, 9th Dist. Lorain No. 06CA008871, 2006-Ohio-5810, ¶ 5.

{¶10} The trial court made each of the following factual findings. At approximately 9:51 p.m. on a Sunday evening, Sergeant Nemastil spotted a stopped vehicle while traveling northbound on Interstate 71. At the time, the sergeant had ten years' worth of experience as an Ohio State Highway Patrolman and had conducted at least 1,000 OVI arrests. The vehicle that Sergeant Nemastil spotted was located on the right berm of the highway, and its right turn signal was activated. The sergeant ultimately approached the vehicle on the passenger's side and spoke with Mr. Corn and his front seat passenger. The sergeant quickly determined that Mr. Corn's vehicle was sound and that neither he, nor his passenger, was having a medical emergency. Mr. Corn notified the sergeant that he had pulled over to change the setting on his GPS and to use the bathroom.

{¶11} During his conversation with Mr. Corn, Sergeant Nemastil observed several indicators of impairment. Specifically, he noted the odor of alcohol in the vehicle, the fact that Mr. Corn had red, bloodshot, and glassy eyes, and the fact that an unlit cigarette was hanging from Mr. Corn's lips. Mr. Corn also admitted that he had consumed alcohol that evening but claimed it had been several hours since he had done so "because he 'was a CDL driver.'" Mr. Corn had no trouble producing his license or insurance and did not display any impaired motor skills while

inside the vehicle. After speaking with Mr. Corn and making the foregoing observations, Sergeant Nemastil asked him to exit the vehicle.

{¶12} The trial court found that Sergeant Nemastil acted unlawfully when he asked Mr. Corn to step out of his vehicle, and therefore, any evidence the sergeant garnered from that point forward was inadmissible. The court found that a few factors pointed toward Mr. Corn's possible impairment, including the appearance of his eyes and the smell of alcohol coming from his vehicle. The court also reasoned, however, that other factors weighed against the conclusion that he was impaired. Those factors included the time and day of the stop, the location of the stop, the lack of any erratic driving on the part of Mr. Corn, the lack of any third-party reporting he might be intoxicated, Mr. Corn's cooperative demeanor, and Mr. Corn's limited admission of an unspecified amount of alcohol several hours earlier.

{¶13} Acknowledging that Sergeant Nemastil noticed Mr. Corn's speech was slurred, the trial court found that the slurred speech was "not an indication of impairment in and of itself." The court found that Mr. Corn suffered from a speech impediment based on testimony he offered during the suppression hearing. Further, the court noted, Sergeant Nemastil never described the intensity of the odor of alcohol he smelled while standing outside Mr. Corn's vehicle. Finding that more factors weighed in favor of Mr. Corn, the court identified as "the tipping point" in its analysis the fact that "no impaired or erratic driving was witnessed by the trooper, nor were any actions of [Mr. Corn] while still in the vehicle indicating a lack of coordination." Based on its consideration of the totality of circumstances, the trial court concluded that Sergeant Nemastil lacked reasonable suspicion for Mr. Corn's continued detention.

{¶14} The State has not challenged any of the trial court's factual findings, and our review of the record supports the conclusion that those findings are based on competent, credible

evidence. Accordingly, this Court accepts those findings as true. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. We limit our review to the trial court's legal conclusion that Sergeant Nemastil lacked reasonable suspicion to detain Mr. Corn once he completed his welfare check. *See id.*

{¶15} The State argues that multiple factors supported Sergeant Nemastil's continued detention of Mr. Corn. Those factors included the sergeant finding Mr. Corn parked on the berm of the highway at 10:00 p.m., the smell of alcohol coming from his vehicle, the unlit cigarette hanging from his mouth, his red, bloodshot, and glassy eyes, his slurred speech, and his admission that he had consumed alcohol that evening. While Sergeant Nemastil did not observe any impaired driving on the part of Mr. Corn, the State argues that any such observation was an impossibility given that Mr. Corn's vehicle was already stopped when the sergeant first observed it. The State notes that Sergeant Nemastil had significant experience conducting OVI investigations and arresting impaired individuals. Under the totality of the circumstances, the State argues, the sergeant was justified in continuing to detain Mr. Corn to investigate his possible impairment.

{¶16} As previously noted, reasonable suspicion is adjudged under a standard of objective reasonableness based on the facts known to an officer at the time of his investigation. *Hunter*, 2006-Ohio-5810, at ¶ 6. It is not entirely clear whether the trial court gave any weight to Mr. Corn's slurred speech in conducting its totality of the circumstances review as it wrote that Mr. Corn's speech was not an indication of impairment "in and of itself." To the extent the trial court did not consider Mr. Corn's slurred speech as a possible indicator of impairment, however, we must conclude that it erred by failing to do so. Even if Mr. Corn's slurred speech was caused by a speech impediment, Sergeant Nemastil was not aware of that fact while conducting his investigation. *See id.* Moreover, "[f]acts which could be given an innocent interpretation will

support the decision to briefly detain someone for questioning, 'so long as one may rationally infer from the totality of the circumstances that the person may be involved in criminal activity.'" *Id.* at ¶ 6, quoting *State v. Jones*, 9th Dist. Summit No. 20810, 2002 WL 389055, *3 (Mar. 13, 2002). Sergeant Nemastil noted Mr. Corn's slurred speech in conjunction with the other indicators of impairment he observed that evening.

{¶17} Based on a review of the totality of the circumstances, this Court must conclude that Sergeant Nemastil possessed reasonable suspicion to detain Mr. Corn to investigate his possible impairment. The sergeant encountered Mr. Corn at a late hour, he smelled alcohol emanating from Mr. Corn's vehicle, he saw that Mr. Corn's eyes were red, bloodshot, and glassy, he heard Mr. Corn slur words while speaking with him, and Mr. Corn admitted he had consumed alcohol that evening. *Compare State v. High*, 9th Dist. Medina No. 17CA0019-M, 2017-Ohio-8264, ¶ 10-13 (reasonable suspicion lacking where officer failed to categorize intensity of alcohol odor he detected, failed to ask follow-up questions about alcohol consumption, and never testified as to any red, glossy, or bloodshot eyes or slurred speech). "While it would have been prudent for [Sergeant Nemastil] to ask [Mr. Corn] additional questions about his alcohol consumption and to describe the intensity of the odor he detected, we cannot conclude that his failure to do so was fatal to his determination of reasonable suspicion." *State v. Butcher*, 9th Dist. Medina No. 19CA0038-M, 2020-Ohio-3524, ¶ 14. Likewise, the fact that the sergeant did not witness any impaired driving on the part of Mr. Corn is inapposite as the sergeant reasonably could have relied on physiological factors as evidence of Mr. Corn's impaired driving ability. *See State v. Snowberger*, 9th Dist. Summit No. 29853, 2022-Ohio-279, ¶ 12. Sergeant Nemastil's experience, in conjunction with the location of the stop, Mr. Corn's appearance, and the surrounding circumstances, gave rise to reasonable suspicion for Mr. Corn's continued detention. *See Kordich*, 2017-Ohio-234, at ¶ 7,

quoting *Biehl*, 2004-Ohio-6532, at ¶ 14. As such, we must conclude that the trial court erred when it granted Mr. Corn's motion to suppress. The State's first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

THE ACTING JUDGE OF THE MEDINA MUNICIPAL COURT ERRED IN TAKING JUDICIAL NOTICE OF [MR. CORN'S] SLURRED SPEECH IMPEDIMENT.

{¶18} In its second assignment of error, the State argues the trial court erred when it took judicial notice of the fact that Mr. Corn suffered from a slurred speech impediment. Given our resolution of the State's first assignment of error, its second assignment of error is moot, and we decline to address it. *See* App.R. 12(A)(1)(c).

### III.

{¶19} The State's first assignment of error is sustained, and its second assignment of error is moot. The judgment of the Medina Municipal Court is reversed, and the matter is remanded for further proceedings in accordance with the foregoing opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Medina Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
BETTY SUTTON
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

J. MATTHEW LANIER, Prosecuting Attorney, for Appellant.

DAVID SHELDON, Attorney at Law, for Appellee.