[Cite as *State v. Kelley*, 2026-Ohio-2013.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellant

    v.

JESSE R. KELLEY

    Appellee

C.A. No.    25CA012322

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    24CR112246

DECISION AND JOURNAL ENTRY

Dated: May 29, 2026

---

STEVENSON, Judge.

{¶1} Plaintiff-Appellant State of Ohio appeals from the judgment of the Lorain County Common Pleas Court granting Defendant-Appellee Jesse Kelley's motion to suppress. For the reasons set forth below, this Court reverses and remands for further proceedings.

I.

{¶2} In December 2024, Mr. Kelley was indicted on one count of improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(D)(1), a felony of the fifth degree, one count of operating a vehicle under the influence of alcohol ("OVI") in violation of R.C. 4511.19(A)(1)(a) (impaired), and one count of OVI in violation of R.C. 4511.19(A)(1)(i) (per se). The OVI counts are both misdemeanors of the first degree. Mr. Kelley pleaded not guilty to the indictment. He filed two motions to suppress evidence, one on constitutional grounds for improper expansion of the scope of his detention, the other to suppress the results of a urine alcohol test on statutory grounds. The court held a hearing on the motions.

{¶3}    The hearing transcript reflects that on June 25, 2024, Ohio State Highway Patrol Trooper Craig Hodgkinson was on patrol at milepost 141 of the Ohio Turnpike. The Cleveland Dispatch Center received a call reporting a reckless vehicle in the vicinity of Trooper Hodgkinson. The caller described the vehicle as a dark green Jeep and reported that the driver was wearing a bright reflective vest. Shortly thereafter, Trooper Hodgkinson saw a black Jeep approaching his location in the right lane and observed that the driver was wearing clothing matching the caller's description. Trooper Hodgkinson began following the Jeep and observed initially that "there was congestion, multiple vehicles stacked up behind it" which indicated "a slower moving vehicle[.]" He also observed that the vehicle was making multiple marked lane violations, meaning that it "crossed over out of its marked lane more than once." As Trooper Hodgkinson caught up to the Jeep, it passed him and started following too closely to a truck at a high rate of speed which he described as "not normal." At that point, Trooper Hodgkinson initiated a traffic stop.

{¶4}    Trooper Hodgkinson approached the Jeep from the passenger side and noted that the driver's side window was down. He asked the driver for his identification, driver's license, and registration, and learned that the driver was Mr. Kelley. Trooper Hodgkinson detected an odor of alcohol emanating from the vehicle. He observed that Mr. Kelley spent more time than usual looking for his registration and that his movements were slow. Trooper Hodgkinson also noticed that "[Mr. Kelley's] speech was slurred" and "slower[,]" and "[h]is face had . . . like a tired type of appearance to it, like a droopier type of tired appearance[,]" and his eyes were "bloodshot[.]" Based on Trooper Hodgkinson's thirteen years of training and experience, those behaviors indicated to him the possibility of impairment. At that point, believing Mr. Kelley to be impaired, Trooper Hodgkinson asked Mr. Kelley to exit the vehicle whereafter he conducted a further OVI investigation.

{¶5} The trial court granted Mr. Kelley's motions to suppress and the State timely appealed. The State's appeal is limited to the portion of the trial court's decision suppressing the evidence on constitutional grounds.

II.

**ASSIGNMENT OF ERROR**

**THE TRIAL COURT ERRED IN GRANTING JESSE KELLEY'S MOTION TO SUPPRESS WHERE ITS LEGAL CONCLUSION THAT THE TROOPER LACKED REASONABLE, ARTICULABLE SUSPICION TO EXPAND THE SCOPE OF THE TRAFFIC STOP TO INVESTIGATE KELLEY FOR OPERATING A VEHICLE UNDER THE INFLUENCE WAS INCORRECT.**

{¶6} In granting Mr. Kelley's motion to suppress, the trial court found that:

in reviewing the totality of the circumstances, Trooper Hodgkinson did not possess the requisite "specific, articulable facts showing a reasonable basis for the request." This is due to the fact that Hodgkinson neglected to have [Mr. Kelley] perform any of the suggested pre-exit tests, admissions that individuals who are sober may exhibit similar behavior as that of [Mr. Kelley], and [Mr. Kelley's] ability to complete requested tasks with limited, if any, difficulty.

{¶7} The State maintains that based on Trooper Hodgkinson's observations of Mr. Kelley's possible impairment after the initial stop, Trooper Hodgkinson had the requisite reasonable suspicion to justify lengthening the stop to further investigate his suspicions. The State argues that in granting Mr. Kelley's motion to suppress, the trial court incorrectly relied on various factors that were not present during Trooper Hodgkinson's encounter with Mr. Kelley at the time of the stop rather than reviewing the actual observations of Trooper Hodgkinson that resulted in a further OVI investigation. We agree with the State.

{¶8} The Ohio Supreme Court has stated:

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial

court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

(Citations omitted.) *State v. Burnside*, 2003-Ohio-5372, ¶ 8. "Once this Court has determined that the trial court's factual findings are supported by the evidence, we consider the trial court's legal conclusions de novo." *State v. Iloba*, 2021-Ohio-3700, ¶ 7 (9th Dist.). Here, the State does not dispute that the findings of fact contained in the trial court's judgment entry granting Mr. Kelley's motion to suppress are supported by competent, credible evidence in the record. The State disagrees with the application of the law to those facts. The State challenges the trial court's legal conclusion that Trooper Hodgkinson lacked reasonable articulable suspicion to expand the scope of the stop. Therefore, our task is to undertake a de novo review and independently determine whether the facts, when applied to the law, constitute reasonable, articulable suspicion. *Burnside* at ¶ 8; *Iloba* at ¶ 7.

{¶9} In general, "[a]n investigative stop may last no longer than necessary to accomplish the initial goal of the stop." *State v. Rackow*, 2008-Ohio-507, ¶ 8 (9th Dist.). "An officer may not prolong a stop for the purpose of conducting inquiries unrelated to the original purpose [for the stop] without 'the reasonable suspicion ordinarily demanded to justify detaining an individual.'" *Iloba* at ¶ 9, quoting *Rodriguez v. United States*, 575 U.S. 348, 355 (2015). "[R]easonable suspicion exists if an officer can point to specific and articulable facts indicating that a driver may be committing a criminal act." *Wadsworth v. Engler*, 1999 WL 1215151, *3 (9th Dist. Dec. 15, 1999). "The totality of the circumstances is considered when determining whether reasonable suspicion exists." *State v. Panaro*, 2018-Ohio-1005, ¶ 18 (9th Dist.).

{¶10} The Ohio Supreme Court has identified the following four general categories of factors justifying an investigatory stop: "(1) location; (2) the officer's experience, training or

knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances." *State v. Biehl*, 2004-Ohio-6532, ¶ 14 (9th Dist.). Moreover, reasonable suspicion is based on "*the facts known to the police officer at the time of the stop*[.]" (Emphasis added.) *State v. Hunter*, 2006-Ohio-5810, ¶ 5 (9th Dist.).

{¶11} The facts in this case are similar to those that have come before us in other cases involving this issue. In *State v. Saravia*, 2012-Ohio-1443 (9th Dist.), we concluded that the police officer had reasonable suspicion for conducting field sobriety tests after he responded to a citizen informant's tip about a car being driven erratically and observed Mr. Saravia's glassy, bloodshot eyes, smelled an odor of alcohol, and noted his difficulty in removing his identification from his wallet. *Id.* at ¶ 11. In *State v. Corn*, 2022-Ohio-3095 (9th Dist.), we concluded that the sergeant had reasonable suspicion to continue detaining Mr. Corn following a welfare check where the sergeant observed several indicators of impairment during his conversation with Mr. Corn, including the odor of alcohol coming from the vehicle and the fact that Mr. Corn had "red, bloodshot, and glassy" eyes. *Id.* at ¶ 11, 17. *See also State v. Acres*, 2025-Ohio-1592, ¶ 4 (9th Dist.) (reasonable suspicion of impairment arose during the sergeant's conversation with defendant in her community caretaking role wherein she observed the odor of alcohol, glassy eyes, slow movements, and an open container of alcohol).

{¶12} Similar indications of impairment are present here as in *Corn, Acres,* and *Saravia.* Trooper Hodgkinson observed Mr. Kelley driving erratically and committing multiple marked lane violations after receiving an anonymous tip while on patrol. When he approached the vehicle and began speaking with Mr. Kelley, Trooper Hodgkinson observed several hallmark indicators of impairment based on his training and experience; *i.e.*, an odor of alcohol emanating from the vehicle; slow movements; slurred, slow speech; bloodshot eyes; and a droopy, tired-looking face.

Based on these observations, Trooper Hodgkinson became suspicious that Mr. Kelley was impaired. Nonetheless, in reaching its conclusion, the trial court placed less focus on this evidence of possible impairment and more emphasis on factors that the Trooper did *not* observe but which may have indicated Mr. Kelley was sober, including that Mr. Kelley was not disrespectful or argumentative, removed his driver's license from his wallet without difficulty, did not drop anything when removing his registration from the glovebox, and that Trooper Hodgkinson did not have him perform any pre-exit sobriety tests.

{¶13} As noted above, the correct legal standard in determining whether there are specific, articulable facts supporting reasonable suspicion is to consider the totality of the circumstances "known to the officer at the time of the stop," meaning the facts and evidence present in the case. *Hunter*, 2006-Ohio-5810, at ¶ 5 (9th Dist.). Pursuant to the four-pronged test set forth in *Biehl,* 2004-Ohio-6532, at ¶ 10 (9th Dist.), a totality of the circumstances review does *not* include consideration of factors that were absent and not observed. Thus, in determining whether the Trooper possessed reasonable suspicion to extend the stop in this case, the court's overreliance on what the Trooper did not observe was misplaced. As we have determined in previous cases, the totality of the circumstances supports a finding of reasonable suspicion when an officer observes multiple traffic violations and upon approaching the driver observes the odor of alcohol, slurred speech, red and bloodshot eyes, and slow movements. *See Saravia, Corn,* and *Acres*.

{¶14} Additionally, "[f]acts which could be given an innocent interpretation will support the decision to briefly detain someone for questioning, 'so long as one may rationally infer from the totality of the circumstances that the person may be involved in criminal activity.'" *Hunter*, at ¶ 6, quoting *State v. Jones*, 2002-WL 389055, * 3 (9th Dist. Mar.13, 2002). "'A determination

that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct.'" *State v. Hawkins*, 2019-Ohio-4210, ¶ 22, quoting *United States* v. *Arvizu*, 534 U.S. 266, 277 (2002). Thus, even if there had been an innocent explanation for a portion of Mr. Kelley's behavior and appearance, that does not negate the validity of Trooper Hodgkinson's observations of impairment which led to the rational inference that Mr. Kelley "may be involved in criminal activity." *Hunter* at ¶ 6.

{¶15} Therefore, based on our review of the totality of the circumstances known to Trooper Hodgkinson at the time of the stop, we conclude that he had reasonable suspicion to expand the scope of the stop to investigate Mr. Kelley's possible impairment. Accordingly, the trial court erred in granting Mr. Kelley's motion to suppress. The State's assignment of error is sustained.

III.

{¶16} The State's assignment of error is sustained, and the judgment of the Lorain County Court of Common Pleas is reversed and remanded for further proceedings.

Judgment reversed,
and cause remanded.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period

for review shall begin to run.  App.R. 22(C).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.


_____
SCOT STEVENSON
FOR THE COURT


HENSAL, P. J.
CONCURS IN JUDGMENT ONLY.

SUTTON, J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

ANTHONY CILLO, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, for Appellant.

ROBERT G. WALTON, Attorney at Law, for Appellee.